UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JULES ANTHONY GHOLAR,<br><br>　　　　Petitioner,<br><br>　vs.<br><br>ROBERT HICKMAN,<br><br>　　　　Respondent. | No. 2:12-cv-1585-MCE-EFB P<br><br><br><br><br><br>FINDINGS AND RECOMMENDATIONS |

Petitioner is a state prisoner proceeding without counsel with a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. He challenges a judgment of conviction entered against him on May 7, 2010, in the Sacramento County Superior Court on charges of second degree murder with a sentencing enhancement for use of a firearm. He seeks federal habeas relief on the grounds that the trial court's admission into evidence of statements made by the victim violated his Sixth Amendment right to confront the witnesses against him. Upon careful consideration of the record and the applicable law, it is recommended that the petition be denied.

**I. Background**

In its unpublished memorandum and opinion affirming petitioner's judgment of conviction on appeal, the California Court of Appeal for the Third Appellate District provided the following factual summary:

/////

In the early morning of Thanksgiving Day, defendant, who had been using methamphetamine for several days and was restless and "acting weird," shot Augusta James several times. As James lay dying in a pool of his own blood, he identified defendant as the shooter. A jury convicted defendant of second degree murder (Pen.Code, § 187, subd. (a)) and found true the enhancement for personal use of a firearm (Pen.Code, § 12022.53, subds.(b), (c) & (d)). Defendant was sentenced to 40 years to life in prison.

On appeal, defendant contends the trial court erred in admitting James's statements to his sister and the police as dying declarations. He contends there was insufficient evidence that James believed he was dying and the admission of James's statement to the police violated defendant's right to confrontation under the Sixth Amendment. We disagree and shall affirm.

**FACTS**

On the night before Thanksgiving Day 2008, defendant, Daneen Rothchild, Marvin Singleton, Augusta James (known as AJ), and his girlfriend Brenda Parker were at the house Daneen shared with her mother and daughter.[1] They were smoking crystal methamphetamine and marijuana, as well as drinking. Defendant and Singleton had been using methamphetamine for several days. Defendant looked as if he had not slept; he was acting "antsy" and "weird."

At some point defendant "flashed" a gun in front of Daneen and her mother, Deborah, while the three were in Deborah's room. At another point, while in another room of the house, defendant indicated that he wanted to speak to AJ alone, and asked others present to leave the room, so that he could "holler at [his] brother." Daneen then became angry and asked everyone to leave her house.

Singleton left the house, intending to "drop everyone off," driving with defendant in the front seat and Parker and AJ in the backseat. When Singleton stopped at AJ's house, Parker went to the house but AJ stayed by the car. AJ was trying to get some more methamphetamine. He called someone and reported "the girl" would bring it. Defendant wanted some drugs too and asked to speak to the dealer, but AJ hung up and put the phone in his pocket. Defendant complained, "Man, you didn't hear me. I said, let me talk to her." AJ let defendant use the phone and defendant made a call. He acted surprised during the call and was upset.

Defendant pulled out a gun and said, "eh." AJ leaned down by the car as if to hear or respond to defendant; defendant then fired twice. AJ turned and began running. Defendant jumped out of the car, leaving the door open, and followed AJ shooting. Singleton heard AJ make a sound—"ah, ah"—when he was hit.

---

[1] To avoid confusion, we adopt the parties' practice of referring to members of the Rothchild family by their first names.

2

>Parker screamed. She and AJ's sister Antoinette went looking for AJ. They heard him calling to them. Antoinette asked AJ where he was shot and he responded, "[e]verywhere." AJ told Antoinette, "That bitch ass nigga Jules shot me." Antoinette did not tell the police that AJ had identified the shooter, even when they asked if she knew who shot her brother.[2]
>
>When the police arrived at the scene, AJ was on the ground in a lot of pain; "[h]e was moaning, having trouble breathing, and kind of moving around a little bit." There was a lot of blood. An officer asked AJ who shot him and AJ responded, "Jules." This exchange was captured on tape by a camera in the patrol car. Parts of the tape are unintelligible. No one can be heard asking AJ who shot him, but an officer does ask, "Does anybody know who that was?" A.J. is heard to respond, "Jules."
>
>AJ was taken to the hospital. He died from gunshot wounds to his chest and abdomen. He had suffered multiple gunshot wounds. The two most serious were a shot that entered his left shoulder, severed a vein and artery, injured his left lung, and fractured his collar bone and two ribs, and a shot to his back that exited his abdomen injuring his right lung and causing extensive damage to his liver. Liver injuries are often catastrophic due to blood loss and AJ suffered extensive blood loss.
>
>Meanwhile, immediately after the shooting Singleton drove back to Daneen's, arriving about 10 to 15 minutes after the group had left. He told Daneen and Deborah that defendant had shot AJ. Singleton took Daneen and her daughter to his sister's. Returning to Daneen's in the morning, they found a shell casing in the car and Daneen threw it out the window. Singleton thoroughly cleaned his car.
>
>Later that day, a neighbor witnessed a confrontation between Daneen and defendant. There were varying versions of what was said. Defendant said either, "I didn't do it" or "I didn't mean to do it." Daneen may have said Singleton had a gun in his car, a MAC 10. A MAC 10 looks similar to a Cobray M11/9 pistol, the gun a criminalist opined was likely used in the shooting.

*People v. Gholar,* No. C065396, 2011 WL 3806265, **1 -2 (Cal.App. 3 Dist. Aug. 30, 2011).

After his judgment of conviction was affirmed on appeal, petitioner filed a petition for review. Resp't's Lodg. Doc. 5. By order dated November 16, 2011, that petition was summarily denied. Resp't's Lodg. Doc. 6.

/////

---

[2] Antoinette also testified that she failed to report an incident in the courtroom during an earlier hearing where she claimed defendant mouthed the words, "I did, so what," while holding his "hand shaped like a gun." The deputy present did not observe this and no one else reported it.

3

**II. Standards of Review Applicable to Habeas Corpus Claims**

An application for a writ of habeas corpus by a person in custody under a judgment of a state court can be granted only for violations of the Constitution or laws of the United States. 28 U.S.C. § 2254(a). A federal writ is not available for alleged error in the interpretation or application of state law. *See Wilson v. Corcoran*, 562 U.S.___, ___, 131 S. Ct. 13, 16 (2010); *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991); *Park v. California*, 202 F.3d 1146, 1149 (9th Cir. 2000).

Title 28 U.S.C. § 2254(d) sets forth the following standards for granting federal habeas corpus relief:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim -
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

For purposes of applying § 2254(d)(1), "clearly established federal law" consists of holdings of the United States Supreme Court at the time of the last reasoned state court decision. *Thompson v. Runnels*, 705 F.3d 1089, 1096 (9th Cir. 2013) (citing *Greene v. Fisher*, ___ U.S. ___, 132 S.Ct. 38 (2011); *Stanley v. Cullen*, 633 F.3d 852, 859 (9th Cir. 2011) (citing *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000)). Circuit court precedent "may be persuasive in determining what law is clearly established and whether a state court applied that law unreasonably." *Stanley*, 633 F.3d at 859 (quoting *Maxwell v. Roe*, 606 F.3d 561, 567 (9th Cir. 2010)). However, circuit precedent may not be "used to refine or sharpen a general principle of Supreme Court jurisprudence into a specific legal rule that th[e] [Supreme] Court has not announced." *Marshall v. Rodgers*, 133 S. Ct. 1446, 1450 (2013) (citing *Parker v. Matthews*, 132 S. Ct. 2148, 2155 (2012) (per curiam)). Nor may it be used to "determine whether a particular rule of law is so widely accepted among the Federal Circuits that it would, if presented to th[e] [Supreme] Court,

be accepted as correct. *Id.* Further, where courts of appeals have diverged in their treatment of an issue, it cannot be said that there is "clearly established Federal law" governing that issue. *Carey v. Musladin*, 549 U.S. 70, 77 (2006).

A state court decision is "contrary to" clearly established federal law if it applies a rule contradicting a holding of the Supreme Court or reaches a result different from Supreme Court precedent on "materially indistinguishable" facts. *Price v. Vincent*, 538 U.S. 634, 640 (2003). Under the "unreasonable application" clause of § 2254(d)(1), a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from the Supreme Court's decisions, but unreasonably applies that principle to the facts of the prisoner's case.[3] *Lockyer v. Andrade*, 538 U.S. 63, 75 (2003); *Williams*, 529 U.S. at 413; *Chia v. Cambra*, 360 F.3d 997, 1002 (9th Cir. 2004). In this regard, a federal habeas court "may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." *Williams*, 529 U.S. at 412. *See also Schriro v. Landrigan*, 550 U.S. 465, 473 (2007); *Lockyer*, 538 U.S. at 75 (it is "not enough that a federal habeas court, in its independent review of the legal question, is left with a 'firm conviction' that the state court was 'erroneous.'"). "A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S.___,___,131 S. Ct. 770, 786 (2011) (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). Accordingly, "[a]s a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Richter*,131 S. Ct. at 786-87.

/////

---

[3] Under § 2254(d)(2), a state court decision based on a factual determination is not to be overturned on factual grounds unless it is "objectively unreasonable in light of the evidence presented in the state court proceeding." *Stanley*, 633 F.3d at 859 (quoting *Davis v. Woodford*, 384 F.3d 628, 638 (9th Cir. 2004)).

5

If the state court's decision does not meet the criteria set forth in § 2254(d), a reviewing court must conduct a de novo review of a habeas petitioner's claims. *Delgadillo v. Woodford*, 527 F.3d 919, 925 (9th Cir. 2008); *see also Frantz v. Hazey*, 533 F.3d 724, 735 (9th Cir. 2008) (en banc) ("[I]t is now clear both that we may not grant habeas relief simply because of § 2254(d)(1) error and that, if there is such error, we must decide the habeas petition by considering de novo the constitutional issues raised.").

The court looks to the last reasoned state court decision as the basis for the state court judgment. *Stanley*, 633 F.3d at 859; *Robinson v. Ignacio*, 360 F.3d 1044, 1055 (9th Cir. 2004). If the last reasoned state court decision adopts or substantially incorporates the reasoning from a previous state court decision, this court may consider both decisions to ascertain the reasoning of the last decision. *Edwards v. Lamarque*, 475 F.3d 1121, 1126 (9th Cir. 2007) (en banc). "When a federal claim has been presented to a state court and the state court has denied relief, it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary." *Richter*, 131 S. Ct. at 784-85. This presumption may be overcome by a showing "there is reason to think some other explanation for the state court's decision is more likely." *Id.* at 785 (citing *Ylst v. Nunnemaker*, 501 U.S. 797, 803 (1991)). Similarly, when a state court decision on a petitioner's claims rejects some claims but does not expressly address a federal claim, a federal habeas court must presume, subject to rebuttal, that the federal claim was adjudicated on the merits. *Johnson v. Williams*, ___ U.S. ___, ___, 133 S.Ct. 1088, 1091 (2013).

Where the state court reaches a decision on the merits but provides no reasoning to support its conclusion, a federal habeas court independently reviews the record to determine whether habeas corpus relief is available under § 2254(d). *Stanley*, 633 F.3d at 860; *Himes v. Thompson*, 336 F.3d 848, 853 (9th Cir. 2003). "Independent review of the record is not de novo review of the constitutional issue, but rather, the only method by which we can determine whether a silent state court decision is objectively unreasonable." *Himes*, 336 F.3d at 853. Where no reasoned decision is available, the habeas petitioner still has the burden of "showing there was no reasonable basis for the state court to deny relief." *Richter*, 131 S. Ct. at 784.

A summary denial is presumed to be a denial on the merits of the petitioner's claims. *Stancle v. Clay*, 692 F.3d 948, 957 & n. 3 (9th Cir. 2012). While the federal court cannot analyze just what the state court did when it issued a summary denial, the federal court must review the state court record to determine whether there was any "reasonable basis for the state court to deny relief." *Richter*, 131 S. Ct. at 784. This court "must determine what arguments or theories . . . could have supported, the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of [the Supreme] Court." *Id.* at 786. The petitioner bears "the burden to demonstrate that 'there was no reasonable basis for the state court to deny relief.'" *Walker v. Martel*, 709 F.3d 925, 939 (9th Cir. 2013) (quoting *Richter*, 131 S. Ct. at 784).

When it is clear, however, that a state court has not reached the merits of a petitioner's claim, the deferential standard set forth in 28 U.S.C. § 2254(d) does not apply and a federal habeas court must review the claim *de novo*. *Stanley*, 633 F.3d at 860; *Reynoso v. Giurbino*, 462 F.3d 1099, 1109 (9th Cir. 2006); *Nulph v. Cook*, 333 F.3d 1052, 1056 (9th Cir. 2003).

**III. Petitioner's Claim**

Petitioner's sole claim before this court is that the trial court's admission into evidence of the victim's statements to his sister and to the police that he was shot by petitioner violated his right to confrontation of the witnesses against him, as set forth in *Crawford v. Washington*, 541 U.S. 36 (2004). ECF No. 20 at 7-9.[4]

**A. State Court Decision**

On direct appeal, petitioner argued that the victim's statements to his sister and the police officer failed to satisfy the hearsay exception for dying declarations contained in California Evidence Code § 1242 and were therefore inadmissible. Resp't's Lodg. Doc. 2 at 21-35. He also argued that the victim's statements to the police officer violated the Sixth Amendment

/////

/////

---

[4] Page number citations such as this one are to the page numbers reflected on the court's CM/ECF system and not to page numbers assigned by the parties.

Confrontation Clause. *Id.* at 35-52. Petitioner did not argue that the victim's statements to his sister violated the Confrontation Clause.

The California Court of Appeal rejected petitioner's arguments, reasoning as follows:

> Defendant contends the trial court erred in admitting AJ's dying declarations to his sister and the police in which he identified defendant as the shooter.[5] He contends there was insufficient evidence that AJ was under a sense of impending death when he spoke.
>
> "Evidence of a statement made by a dying person respecting the cause and circumstances of his death is not made inadmissible by the hearsay rule if the statement was made upon his personal knowledge and under a sense of immediately impending death." (Evid.Code, § 1242.)
>
> "The chief condition and characteristic of a 'dying declaration' is the 'sense of immediately impending death' (Evid.Code, § 1242), which may be shown by the declarant's own statements to that effect, or inferred from circumstances such as the declarant's physical condition, the extent of his injuries, his knowledge of his condition, and other types of statements made by the declarant. [Citations.]" (*People v. Sims* (1993) 5 Cal.4th 405, 458.) An express statement indicating knowledge of near death is not required; the declarant's mental state may be determined from the circumstances. (*People v. Wilson* (1942) 54 Cal.App.2d 434, 442.)
>
> Here, there was sufficient circumstantial evidence that AJ sensed his impending death. His condition was grave; he had been shot several times, severing a vein and artery, damaging internal organs, and fracturing bones. He had lost a considerable amount of blood. AJ was in extreme pain, moaning, and trying to move about. Due to injuries to both lungs, he was having trouble breathing. He knew the severity of his condition, telling his sister that he had been shot "[e]verywhere." Courts have upheld admission of statements as dying declarations in similar circumstances. (*People v. Mayo* (2006) 140 Cal.App.4th 535, 553–554 [circumstantial evidence of sense of impending death where declarant suffered 11 gunshot wounds, felt hot and wanted fan to cool himself, and asked if he had been shot in the head]; *People v. Jones* (1961) 197 Cal.App.2d 503, 508 [declarant received two shotgun blasts from 30 feet, was shot four or five times with a revolver and was near death].)

---

[5] Defendant recognizes that he objected only to the admission of AJ's statement to the police, not to AJ's statement as reported by Antoinette. The People first indicated their intention to introduce AJ's statement to Antoinette when defendant renewed his objection to admission of AJ's statement to the police. Defendant argues that any objection to the second statement would have been futile, since the trial court denied both defendant's original motion and the motion to reconsider. The People do not argue that defendant has forfeited his *Crawford* (*Crawford v. Washington* (2004) 541 U.S. 36) challenge to Antoinette's testimony of AJ's statement by his failure to object in the trial court.

We find the cases relied upon by defendant distinguishable. In *People v. Keelin* (1955) 136 Cal.App.2d 860, 873–874, the only evidence offered to show the declarant's sense of impending death was the testimony of a doctor about the declarant's condition. In *People v. Westcott* (1927) 86 Cal.App. 298, 307, the declarant's only recognition of his condition was his statement, "I am sick." In *People v. Smith* (1913) 164 Cal. 451, 457, the declarant, despite mortal injuries, expressed hope he would live.

The trial court did not err in admitting AJ's statements to his sister and to the police identifying defendant as the shooter as dying declarations.

**II**

**Confrontation**

Defendant contends AJ's statement to the police was testimonial and its admission violated his confrontation rights under the Sixth Amendment. This contention was rejected in *People v. Monterroso* (2004) 34 Cal.4th 743.

In *Crawford v. Washington, supra*, 541 U.S. 36 [158 L.Ed.2d 177], the United States Supreme Court held use of an out-of-court statement that is testimonial in nature is prohibited by the Sixth Amendment's Confrontation Clause whether or not the statement is inherently reliable or meets an established exception to the hearsay rule unless the witness is unavailable and the defendant has had a prior opportunity to cross-examine the witness. "Where testimonial statements are at issue, the only indicium of reliability sufficient to satisfy constitutional demands is the one the Constitution actually prescribes: confrontation." (*Id.* at pp. 68–69 [158 L .Ed.2d at p. 203].)

The court left open the possibility that testimonial dying declarations, which were admissible at common law, could be admissible without violating the confrontation clause: "The one deviation we have found involves dying declarations. The existence of that exception as a general rule of criminal hearsay law cannot be disputed. [Citations.] Although many dying declarations may not be testimonial, there is authority for admitting even those that clearly are. [Citations.] We need not decide in this case whether the Sixth Amendment incorporates an exception for testimonial dying declarations. If this exception must be accepted on historical grounds, it is sui generis." (*Crawford v. Washington, supra*, 541 U.S. at p. 56, fn. 6 [158 L.Ed.2d at p. 195].)

Since *Crawford*, the United States Supreme Court has again recognized that dying declarations are a historical exception to the requirement of confrontation for testimonial statements. (*Giles v.. California* (2008) 554 U.S. 353, 358 [171 L.Ed.2d 488, 495].) The high court has not, however, addressed whether the historical exception remains valid. (*See Michigan v. Bryant* (2011) 562 U.S. ----, --- [179 L.Ed.2d 93, 131], diss. opn. of Ginsburg, J. ["Were the issue properly tendered here, I would take up the question whether

9

> the exception for dying declarations survives our recent Confrontation Clause decisions"].)
>
> The California Supreme Court, however, has directly answered the question left open in *Crawford*. In *People v. Monterroso, supra*, 34 Cal.4th 743, the court held the admission into evidence of dying declarations, even if testimonial in nature, does not violate a criminal defendant's Sixth Amendment right to confrontation. "[I]f, as *Crawford* teaches, the confrontation clause 'is most naturally read as a reference to the right of confrontation at common law, admitting only those exceptions established at the time of the founding' [citations], it follows that the common law pedigree of the exception for dying declarations poses no conflict with the Sixth Amendment. We therefore conclude the admission of [the victim's] dying declaration was not error." (*Monterroso, supra*, 34 Cal.4th at p. 765.)
>
> We are bound by the decisions of the California Supreme Court. (*Auto Equity Sales, Inc. v. Superior Court* (1962) 57 Cal.2d 450, 455.) Accordingly, we reject defendant's contention that the admission of AJ's dying declaration violated his Sixth Amendment right to confrontation.[6]

*Gholar*, 2011 WL 3806265, at **2 -4.

**B. Applicable Law**

The Sixth Amendment to the United States Constitution grants a criminal defendant the right "to be confronted with the witnesses against him." U.S. CONST. amend. VI. "The 'main and essential purpose of confrontation is to secure for the opponent the opportunity of cross-examination.'" *Fenenbock v. Director of Corrections for California*, 692 F.3d 910, 919 (9th Cir. 2012) (quoting *Delaware v. Van Arsdall*, 475 U.S. 673, 678 (1986)). The Confrontation Clause applies to the states through the Fourteenth Amendment. *Pointer v. Texas*, 380 U.S. 400, 406 (1965).

In *Crawford*, the United States Supreme Court held that the Confrontation Clause bars the state from introducing into evidence out-of-court statements which are "testimonial" in nature unless the witness is unavailable and the defendant had a prior opportunity to cross-examine the witness, regardless of whether such statements are deemed reliable. *Crawford v. Washington*, 541 U.S. 36 (2004). The Crawford rule applies only to hearsay statements that are "testimonial"

---

[6] As in *Monterroso*, we need not decide whether AJ's dying declaration was testimonial in nature. (*People v. Monterroso, supra*, 34 Cal.4th at p. 765, fn. 5.)

1  and does not bar the admission of non-testimonial hearsay statements. *Id.* at 42, 51, 68. *See also*
2  *Whorton v. Bockting*, 549 U.S. 406, 420 (2007) ("the Confrontation Clause has no application to"
3  an "out-of-court nontestimonial statement.")

4      Although the *Crawford* court declined to provide a comprehensive definition of the term
5  "testimonial," it stated that "[s]tatements taken by police officers in the course of interrogations
6  are . . . testimonial under even a narrow standard." *Crawford*, 541 U.S. at 52. The court also
7  provided the following "formulations" of a "core class" of testimonial statements: (1) "ex parte
8  in-court testimony or its functional equivalent – that is, material such as affidavits, custodial
9  examinations, prior testimony that the defendant was unable to cross-examine, or similar pretrial
10 statements that declarants would reasonably expect to be used prosecutorially;" (2) "extrajudicial
11 statements . . . contained in formalized testimonial materials, such as affidavits, depositions, prior
12 testimony, or confessions;" and (3) "statements that were made under circumstances which would
13 lead an objective witness reasonably to believe that the statement would be available for use at a
14 later trial." *Id.* at 51-52. The court in *Crawford* also pointed out that the Sixth Amendment
15 Confrontation Clause "does not bar the use of testimonial statements for purposes other than
16 establishing the truth of the matter asserted." *Id.* at 59, n. 9. However, "state evidence rules do
17 not trump a defendant's constitutional right to confrontation," and a reviewing court "ensures that
18 an out-of-court statement was introduced for a 'legitimate, nonhearsay purpose' before relying on
19 the not-for-its-truth rationale to dismiss the Confrontation Clause's application." (citation
20 omitted). *Williams v. Illinois*, ___ U.S. ___, 132 S.Ct. 2221, 2226 (2012).

21     **C. Analysis**
22         **1. The Victim's Statement to his Sister**
23     In the petition before this court, petitioner claims that the trial court's admission into
24 evidence of the victim's statement to his sister violated the Sixth Amendment Confrontation
25 /////
26 /////
27 /////
28 /////

11

Clause.[7] Respondent argues that this claim was not exhausted in state court and should be denied on that basis. ECF No. 25 at 9-11.

Generally, a state prisoner must exhaust all available state court remedies, either on direct appeal or through collateral proceedings, before a federal court may consider granting habeas corpus relief. 28 U.S.C. § 2254(b)(1). However, a federal court considering a habeas petition may deny an unexhausted claim on the merits when it is perfectly clear that the claim is not "colorable." 28 U.S.C. § 2254(b)(2) ("An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State"); *Cassett v. Stewart*, 406 F.3d 614, 624 (9th Cir. 2005) (holding that "a federal court may deny an unexhausted petition on the merits only when it is perfectly clear that the applicant does not raise even a colorable federal claim"). Assuming arguendo that this claim was not exhausted in state court, for the reasons that follow, this court will recommend that it be denied on the merits. *See* 28 U.S.C. § 2254(b)(2)

The victim's statement to his sister that he was shot by petitioner is not "testimonial" and therefore is not prohibited by the Confrontation Clause. The statement was not made under circumstances which would lead an objective witness to believe it would be available for later use at a trial, nor was it made to a government officer, as was the case in *Crawford*. Finally, the statement does not fall within the "per se" examples of testimonial evidence offered by the *Crawford* court, all of which involve out-of-court statements elicited by a government officer with a view to prosecution. Rather, the victim made the statement to his sister with no expectation it would be used by a prosecutor at a later trial. Under these circumstances, the statement is not inadmissible under the Sixth Amendment Confrontation Clause. *See Jensen v. Pliler*, 439 F.3d 1086 (9th Cir. 2006) (statements made by declarant to his attorney were non-testimonial and therefore not barred by the Confrontation Clause); *Doan v. Carter*, 548 F.3d 449,

---

[7] Any claim that the victim's statements to the police and/or to his sister were improperly admitted under California law or statute is not cognizable in this federal habeas corpus proceeding. *Estelle*, 502 U.S. at 67. As explained above, a federal writ is not available for alleged error in the interpretation or application of state law. *Wilson v. Corcoran*, 131 S. Ct. at 16.

458 (6th Cir. 2008) (victim's statements to friends and neighbors not testimonial); *United States v. Manfre*, 368 F.3d 832, 838 n.1 (8th Cir. 2004) (statements made by declarant to family members were not "testimonial" because they were "not the kind of memorialized, judicial-process-created evidence of which *Crawford* speaks"); *Gonzales v. Clark*, No. CV 08-02251-AG (VBK), 2009 WL 3233906, *8 (C.D. Cal. Sept. 30, 2009) (petitioner's private statements to his aunt not testimonial in nature). Accordingly, petitioner is not entitled to federal habeas relief on this Sixth Amendment claim.

### 2. **Victim's Statement to Police Officer**

Petitioner also claims that the trial court's admission into evidence of the victim's statement to police officers that petitioner shot him violated the Confrontation Clause. Assuming arguendo that petitioner's statement to the police was "testimonial," as that term has been defined by the United States Supreme Court, this claim should also be denied.

As explained above, a federal habeas court must deny habeas relief with respect to any claim adjudicated on the merits in a state court proceeding unless the proceeding "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(1), (2). "Clearly established Federal law" under § 2254(d)(1) is the governing legal principle or principles set forth by the Supreme Court at the time the state court renders its decision." *Lockyer v. Andrade*, 538 U.S. 63, 71-72 (2003). The victim's statement to the police that petitioner shot him was admitted into evidence at petitioner's trial as a dying declaration. As noted by the California Court of Appeal, at the time the state court rendered its decision on this Sixth Amendment claim, the United States Supreme Court had expressly declined to decide whether dying declarations constitute an exception to the rule announced in *Crawford*. Accordingly, there is no clearly established United States Supreme Court case which "squarely addresses" this issue. Under these circumstances, the state court did not unreasonably apply federal law in concluding that petitioner was not entitled to relief with respect to his claim that the victim's testimonial statement to police violated the dictates of

*Crawford*. *See Moses v. Payne*, 555 F.3d 742, 754 (9th Cir. 2009) ("we conclude that when a Supreme Court decision does not 'squarely address[ ] the issue in th[e] case . . . it cannot be said, under AEDPA, there is 'clearly established' Supreme Court precedent addressing the issue before us, and so we must defer to the state court's decision"); *Earp v. Ornoski*, 431 F.3d 1158, 1185 (9th Cir. 2005) (petitioner's ineffective assistance of counsel claim failed under AEDPA because the issue was an "open question" in the jurisprudence of the Supreme Court). In the absence of an on point decision by the United States Supreme Court, the state court's decision with respect to this Sixth Amendment claim is not contrary to or an unreasonable application of Supreme Court authority.

**IV. Conclusion**

Accordingly, IT IS HEREBY RECOMMENDED that petitioner's application for a writ of habeas corpus be denied.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within fourteen days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Any reply to the objections shall be served and filed within fourteen days after service of the objections. Failure to file objections within the specified time may waive the right to appeal the District Court's order. *Turner v. Duncan*, 158 F.3d 449, 455 (9th Cir. 1998); *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991). In his objections petitioner may address whether a certificate of appealability should issue in the event he files an appeal of the judgment in this case. *See* Rule 11, Rules Governing Section 2254 Cases (the district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant).

DATED: June 23, 2015.

EDMUND F. BRENNAN
UNITED STATES MAGISTRATE JUDGE